UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION  LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>JOEL SANCHEZ-MENDOZA,<br>    Defendant. | CRIMINAL NO. 5:25-90-KKC-EBA-1<br><br><br>**OPINION AND ORDER** |

This matter is before the Court on the defendant's motion (R. 50) requesting various remedies following the Court's declaration of a mistrial of this matter.

**I.      Background**

Joel Sanchez-Mendoza is charged with five counts related to his use of the identity of another person – Luis Morales-Montanez.

Prior to Sanchez-Mendoza's trial, a different case went to trial before this Court in which the defendant was identified as Luis Morales-Montanez. *See United States v. Luis Morales-Montanez*, 5-17-40 (E.D. Ky. filed March 9, 2017). The person identified as Morales-Montanez was found guilty in that case, served his sentence, and began supervised release on April 30, 2024. At some point, however, his supervising United States Probation Officer Michael Raccuia learned information that he believed indicated that the person tried as "Luis Morales Montanez" was actually named Joel Sanchez-Mendoza.

This prosecution followed. The five counts charged against Sanchez-Mendoza are:

    1) knowingly obtaining Hydrocodone by a misrepresentation, namely the use of Morales-Montanez's name, date of birth, and social security number, in violation of 21 U.S.C. § 843(a)(3);

1

    2) falsely claiming to be a U.S. citizen with the intent to unlawfully work in the U.S. in violation of 18 U.S.C. § 1015(e);
    3) using Morales-Montanez's identity during the felony described in the second count in violation of 18 U.S.C. § 1028A(a)(1) and (c) (Aggravated Identity Theft);
    4) falsely claiming to be a U.S. citizen with the intent to obtain a state benefit, namely a Kentucky Commercial Driver's License, in violation of 18 U.S.C. § 1015(e); and
    5) using Morales-Montanez's identity during the felony described in the fourth count in violation of 18 U.S.C. § 1028A(a)(1) and (c) (Aggravated Identity Theft).

The Court began a trial of this case on October 20, 2025. Two issues quickly arose. The first dealt with a federal document called a Form I-9 that, according to the government, Sanchez-Mendoza completed to obtain employment at McLane Midwest. A Form I-9 requires an employee to state whether he is a U.S. Citizen. The second issue at trial dealt with the testimony of Officer Raccuia, who was the first witness the United States called.

As to the first issue, defense counsel objected to the government discussing the I-9 during opening statements because the government had not provided a certification as to its authenticity. Sanchez-Mendoza's employer McLane had provided some employment records and a certification of those records in response to the government's subpoena. That group of records, however, did not include the I-9. Later, the government produced an I-9 during discovery, but it did not include a certification. During a sidebar, the government stated it had a "second certification" that included the I-9, and the Court permitted the government to reference the I-9 in its opening.

As to the second issue, during Officer Raccuia's direct testimony, the Court recessed for lunch. The Court instructed Officer Raccuia before he left the courtroom, "Sir, don't discuss your testimony with any other witnesses in the case." Officer Raccuia responded, "Yes, ma'am." (R. 46 Tr. 38.) After the lunch break, the Court met with counsel before calling the jury to the

courtroom. The parties advised the Court that Officer Raccuia spoke with Special Agent James Bugg and U.S. Probation Officer Melissa Markwell during the lunch break. (R. 46 Tr. 39.) Agent Bugg was the case agent and was seated at counsel table throughout the opening statements and Officer Raccuia's testimony. The government had identified Officer Markwell as a potential witness, but she had not yet been present in the courtroom.

The Court called Officer Raccuia back to the stand for a hearing outside the presence of the jury. Officer Raccuia confirmed that he spoke with Agent Bugg and Officer Markwell during the break. He recognized that the Court instructed him not to do so. (*Id*. at 40-41.) He testified that he spoke with Agent Bugg about whether he "was doing okay testifying in general." He also asked Agent Bugg "how was the opening statements and what the defense" was. (*Id*. at 41.) Agent Bugg informed Officer Raccuia that the defense "had to do with. . . whether or not there was an actual person who is Luis Morales-Montanez." (*Id*.) Officer Raccuia remembered that Officer Markwell's pretrial services report in the Morales-Montanez case may be proof that Sanchez-Mendoza was aware of a person identified as Luis Morales-Montanez in Massachusetts. (*Id*.) He testified that he reminded Officer Markwell of that note in the report. (*Id*. at 42.)

Defense counsel moved for a mistrial, arguing that the government witnesses were "tailoring their testimony to combat what our defense is." (*Id*. at 43.)

Defense counsel also raised the I-9 issue stating that the government had informed him that the "second certification" by McLane that would have included the I-9 "wasn't correct" and the government was attempting to get another one. (*Id*. at 44.) Defense counsel pointed out that Federal Rule of Evidence 902(11) requires that the certification be provided to the opposing party prior to trial.

3

The Court declared a mistrial based on the Officer Raccuia issue and, thus, did not resolve the I-9 issue.

Defense counsel now argues that the Court should dismiss the indictment. In the alternative, defense counsel states that, at the retrial, the Court should impose the following evidentiary conditions on the government:

- The government should be prohibited from discussing or introducing the I-9.
- Officers Raccuia and Markwell and Agent Bugg should be prohibited from testifying.
- At a minimum, Officer Raccuia and Agent Bugg should be prohibited from testifying as to anything related to the intent element of the Aggravated Identify Theft counts and the details of their investigation and Officer Markwell should be prohibited from testifying about the bond interview or bond hearing in the Morales-Montanez case.

After this motion was briefed, the Court conducted a hearing at which Officers Raccuia and Markwell and Agent Bugg testified.

Officer Raccuia testified largely consistent with his testimony at the prior hearing. He testified that he initiated the conversation with Agent Bugg about the trial during the lunch break. He testified that he asked Agent Bugg about how well he was explaining things and also about the defense's opening statement. Officer Bugg told him that the defense would be that Sanchez-Mendoza did not know Morales-Montanez was a real person. Officer Raccuia told Agent Bugg the bond report was evidence of Sanchez-Mendoza's knowledge, and Agent Bugg told him to tell the prosecutor.

Agent Bugg testified that Officer Raccuia did not eat lunch that day and did most of the talking. He said Officer Raccuia was nervous; it was his first time testifying at trial, and he wanted to know how he did. Agent Bugg said he tried to calm Officer Raccuia about his testimony. He did not remember any conversation about the opening statements or the bond

4

report. He believes after lunch they discussed the I-9 certification. Agent Bugg testified that Officer Raccuia did not ask him about what his testimony should be, and he did not instruct Officer Raccuia as to what his testimony should be.

Officer Raccuia testified that, after lunch with Agent Bugg, he called Officer Markwell. Before trial, there had been some question as to whether Officer Markwell's testimony would be necessary. She testified that she had left the courthouse with the understanding Officer Raccuia or defense counsel would advise her as to whether her testimony would be necessary. Officer Raccuia testified he called her to tell her she should expect to testify because the government would have to prove that Sanchez-Mendoza knew Luis Morales-Montanez was an actual person. Officer Markwell testified that this conversation was brief, less than a minute. Officer Raccuia informed her that she would have to testify regarding the pretrial services report, but she interpreted this as simply a message that it was time for her to come back to the courthouse. She was aware before this conversation that, if she were called to testify, she would testify about the pretrial services report. She testified that she did not instruct Officer Raccuia as to what his testimony should be.

Officer Raccuia testified that, soon after talking to Officer Markwell, he realized he had "screwed up" and he immediately tried to contact the prosecutor. He could not reach the prosecutor immediately but informed a person on the prosecutor's staff. Officer Raccuia testified that he did not tell Agent Bugg or Officer Markwell how to testify; nor did either of them tell him how to testify.

**II.   Analysis**

A defendant's decision to move for a mistrial "is generally deemed a waiver of [his] double jeopardy rights, meaning retrials are allowed." *United States v. Foster*, 945 F.3d 470, 474

(6th Cir. 2019). For his argument that the indictment should be dismissed, however, Sanchez-Mendoza points out that "the Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *United States v. Dinitz*, 424 U.S. 600, 611 (1976). "Absent evidence of prosecutorial intent to provoke a mistrial, there is no double jeopardy violation." *Foster*, 945 F.4d at 475 (quoting *Phillips v. Ct. Com. Pl., Hamilton Cty.*, 668 F.3d 804, 811 (6th Cir. 2012)).

"Whether the prosecution intended to provoke a mistrial is a factual inquiry." *Id.* at 474. Here, Sanchez-Mendoza does not argue that the prosecutor intended to provoke a mistrial. He argues that the circumstantial evidence proves that Agent Bugg intended to provoke a mistrial. His theory is that Agent Bugg spoke to Officer Raccuia during the lunch recess intending to provoke a mistrial so that the government had more time to obtain a certification for the I-9, which Sanchez-Mendoza argues is a "key piece of evidence" for the Aggravated Identity Theft charges. He argues the delay has benefited the government by giving it time to obtain a certification for the I-9 and to produce it prior to trial this time around.

The Court, however, has not located any cases in which a Court dismissed an indictment after mistrial based on the intent of a government witness, as opposed to the prosecutor. In fact, in a case involving discussion among witnesses in violation of the district court's sequestration order, the Sixth Circuit determined that excluding the witnesses' testimony would require a showing "that the Government consented to or had knowledge of the witnesses' coordination of testimony." *United States v. Martin*, 516 F. App'x 433, 448 (6th Cir. 2013); *see also United States v. Gravley*, 587 F. App'x 899, 916 (6th Cir. 2014).

6

Regardless, even if the Court can consider Agent Bugg's intent in resolving this motion, the Court finds no evidence that he spoke with Officer Raccuia in order to provoke a mistrial. As Sanchez-Mendoza states in his motion and as Officer Raccuia testified at the second hearing, it was Officer Raccuia who approached Agent Bugg during the recess; not vice versa. The Court cannot find that, in the seconds between Officer Raccuia's approach and Agent Bugg's response, Agent Bugg formulated an intent to provoke a mistrial based on a concern about the I-9. Moreover, it is not clear why Agent Bugg would want a mistrial based on the I-9 certification. Sanchez-Mendoza has not established that the I-9 would not have been admissible at the initial trial. Even without a certification, the I-9 could have been authenticated through testimony. The government asserts that a McLane witness was available to authenticate the I-9. Sanchez-Mendoza presents no evidence to the contrary. In fact, he argues that he believed the I-9 would be authenticated through witness testimony. (R. 52 Reply 3.)

Accordingly, the Court cannot find that the government or Agent Bugg intended to provoke a mistrial so that the government would have time to get a certification for the I-9 or for any other reason. Accordingly, dismissing the indictment is not warranted.

As to whether any other remedies might be required, the Court first considers the prejudice to Sanchez-Mendoza caused by the discussion among the witnesses. Sanchez-Mendoza argues that he has been prejudiced because government witnesses are now aware of his defense to the Aggravated Identity Theft charges.

The government, however, becomes aware of the defense in every case after opening statements. Further, as to the particular defense here – that Sanchez-Mendoza cannot be guilty of Aggravated Identity Theft because he was not aware that the victim was an actual person – this is a common defense that the government could have anticipated even before opening statements.

Accordingly, the Court does not find that barring testimony by the witnesses aware of the defense or barring testimony related to that defense is warranted.

The Court has considered whether any other remedy is appropriate in order to address any possible prejudice and to deter similar violations of this Court's orders. Specifically, the Court considered the government's suggestion to allow defense counsel to cross-examine Officer Raccuia and Agent Bugg about their conversations and the violation of the Court's order. The Court agrees, however, with defense counsel's position that such cross examination may prejudice the defense by bringing greater emphasis to the pretrial services report or further confuse the jury in an already confusing case. The Court hopes that the mistrial and hearing alone will deter these witnesses from future similar violations.

As to defendant's request that the Court exclude the I-9, the Court has no basis to find that the I-9 would not have been admissible at the initial trial. Accordingly, it cannot find that excluding the I-9 for the retrial is warranted, assuming that it is admissible under the Federal Rules of Evidence.

### III.   Conclusion

For all these reasons, the Court hereby ORDERS that Sanchez-Mendoza's motion (R. 50) for remedies following mistrial is DENIED. The Court further hereby ORDERS as follows:

1) This matter is set for trial on February 23, 2026 at 9:00 a.m. with counsel to be present at 8:30 a.m.

2) The time between the declaration of the mistrial on October 20, 2025 and the new trial date are EXCLUDED in the computation of time within which the trial must commence pursuant to 18 U.S.C. § 3161(h)(1)(D), which excludes the time for resolving this motion, and 18 U.S.C. § 3161(h)(7)(A) because the ends of justice

outweigh the best interest of the public and defendant in a speedy trial in that an earlier trial date would deny counsel for the defendant the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

This 13th day of January, 2026.

Signed By:
*Karen K. Caldwell*
United States District Judge